IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

LANDIS+GYR INC.,                          )
                                          )
                    Plaintiff,            )
                                          )    C.A. No. 06-82-KAJ
v.                                        )
                                          )
ELSTER ELECTRICITY LLC,                   )
                                          )
                    Defendant.            )

**ELSTER ELECTRICITY LLC'S OPENING BRIEF
IN SUPPORT OF ITS MOTION TO DISMISS**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jheaney@mnat.com
Attorneys for Defendant Elster Electricity LLC

OF COUNSEL:

Steven J. Rocci
Steven B. Samuels
Vincent J. Roccia
WOODCOCK WASHBURN LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

March 23, 2006

<u>TABLE OF CONTENTS</u>

<u>Page</u>

TABLE OF CITATIONS                                                        ii

NATURE AND STAGE OF THE PROCEEDING                                        1

SUMMARY OF ARGUMENT                                                       1

ARGUMENT                                                                  2

    I.    THIS COURT SHOULD DISMISS LANDIS'S DECLARATORY
        JUDGMENT ACTION UNDER THE FIRST-FILED RULE.                   2

    II.   LANDIS'S BREACH OF CONTRACT ACTION SHOULD BE
        DISMISSED FOR FAILURE TO STATE A CLAIM.                       4

CONCLUSION                                                                7

ii.

TABLE OF CITATIONS

Page

Cases

*Bayer Bioscience N.V. v. Monsanto Co.*,
    2003 WL 1565864 (D. Del. Mar. 25, 2003)     3

*Chase Manhattan Bank, USA v. Freedom Card Inc.*,
    265 F. Supp. 2d 445 (D. Del. 2003)     3

*Corixa Corp. v. IDEC Pharmaceuticals Corp.*,
    2002 WL 265094 (D. Del. Feb. 25, 2002)     3

*Cosden Oil & Chem. Co. v. Foster Grant Co.*,
    432 F. Supp. 956 (D. Del. 1977), *aff'd*, 577 F.2d 725 (3d Cir.
    1978)     3

*Dover Downs, Inc. v. TIG Ins. Co.*,
    No. 04-199-SLR, 2004 WL 1812703 (D. Del. 2004)     5

*Eastman Kodak Co. v. Studiengesellschaft Kohle mbH*,
    392 F. Supp. 1152 (D. Del. 1975)     3

*Genetech, Inc. v. Eli Lilly and Co.*,
    998 F.2d 931 (Fed. Cir. 1993)     3

*Interspiro USA Inc. v. Figgie Int'l, Inc.*,
    815 F. Supp. 1488 (D. Del. 1993)     6

*Liquor Exch., Inc. v. Tsaganos*,
    No. 19312-NC, 2004 WL 2694912 (Del. Ch. 2004)     5

*Malpiede v. Townson*,
    780 A.2d 1075 (Del. 2001)     5

*Rhone-Poulenc v. Am. Motorists Ins. Co.*,
    616 A.2d 1192 (Del. 1992)     5

*Smith v. McIver*,
    22 U.S. (9 Wheat.) 532 (1824)     2

*VLIW Tech., LLC v. Hewlett-Packard Co.*,
    840 A.2d 606 (Del. 2003)     4

## NATURE AND STAGE OF THE PROCEEDING

This declaratory judgment action was filed by Landis+Gyr Inc. ("Landis") as an attempt to circumvent an earlier-filed motion by Elster Electricity LLC ("Elster"), in another previously settled action, involving the same issues. Elster's motion was filed on January 19, 2006, to enforce a 1998 Settlement Agreement of a patent infringement case between the parties' predecessors, *ABB Power T&D Co. v. Landis & Gyr Utilities Services Holdings, Inc., et al.,* C.A. No. 97-417-MMS ("Motion to Enforce"). Pursuant to the Settlement Agreement, which incorporated the terms of the parties' license agreement ("PCLA") (Exh. A), and the Stipulation and Order of Dismissal in that case (Exh. B), this Court retained jurisdiction over the parties and the subject matter of the settled action for purposes of enforcing the Settlement Agreement. Elster's motion sought court-ordered discovery under the audit provisions of the PCLA.

In response to Elster's Motion to Enforce, Landis filed this lawsuit (C.A. No. 06-82-KAJ). Landis's Complaint seeks a declaratory judgment that Landis has not breached the audit provisions of the PCLA and alleges that Elster breached the PCLA by filing its Motion to Enforce. Elster has previously moved to enjoin Landis from prosecuting its declaratory judgment action (D.I. 58, C.A. No. 97-417-KAJ), and now moves to dismiss Landis's Complaint under the first-filed rule and for failure to state a claim for breach of contract. This is Elster's opening brief in support of that motion.

## SUMMARY OF ARGUMENT

Landis is playing games with procedure. It is trying to gain the upper hand in what is effectively a royalty dispute that Elster brought to the Court's attention when Elster filed its Motion to Enforce. Landis' declaratory judgment action is a mirror-

image of Elster's first-filed Motion to Enforce, and unduly multiplies the proceedings. Landis should have limited its response to either an opposition to Elster's Motion to Enforce, or to a cross-motion in the same action. Instead, Landis seeks to place itself in the position of plaintiff in an entirely new action.

The first-filed rule adopted by the Third Circuit and this Court require dismissal of Landis's later-filed declaratory judgment action, or in the alternative, that it be stayed pending resolution of Elster's Motion to Enforce or consolidated with that motion in such a manner that Elster remains the putative plaintiff. Furthermore, Landis's breach of contract action is based on a frivolous interpretation of the PCLA and should be dismissed for failure to state a claim.

ARGUMENT

I. THIS COURT SHOULD DISMISS LANDIS'S DECLARATORY JUDGMENT ACTION UNDER THE FIRST-FILED RULE.

It has long been established that "[i]n all cases of concurrent jurisdiction, the Court which first has possession of the subject must decide it." *Smith v. McIver*, 22 U.S. (9 Wheat.) 532, 535 (1824). This "first-filed rule" was adopted by the Third Circuit more than sixty years ago. *See Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925 (3d. Cir. 1941). The rule is intended to promote sound judicial administration and comity among courts in the federal system:

> **The party who first brings a controversy into a court of competent jurisdiction for adjudication should**, **so far as our dual system permits, be free from the vexation of subsequent litigation over the same subject matter**. The economic waste involved in duplicating litigation is obvious. Equally important is its adverse effect upon the prompt and efficient administration of justice ....

*Crosley Corp*, 122 F.2d at 930 (emphasis added).

3.

This Court has also repeatedly held that the first-filed action should proceed and the second-filed action should not.  A plaintiff in this Court is "entitled to be free from the 'vexation of subsequent litigation over the same subject matter' . . . and the courts are entitled to be free from the waste and inefficiency involved in duplicative litigation."  *Cosden Oil & Chem. Co. v. Foster Grant Co.*, 432 F. Supp. 956, 960 (D. Del. 1977), *aff'd*, 577 F.2d 725 (3d Cir. 1978).  *Corixa Corp. v. IDEC Pharmaceuticals Corp.*, 2002 WL 265094, *1 (D. Del. Feb. 25, 2002) *citing Genetech, Inc. v. Eli Lilly and Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993) ("[w]here two patent lawsuits involving the same claims are filed in different jurisdictions, the Federal Circuit requires that the first-filed action be given preference absent special circumstances."); *Bayer Bioscience N.V. v. Monsanto Co.*, 2003 WL 1565864, *1 (D. Del. Mar. 25, 2003) (same); *Chase Manhattan Bank, USA v. Freedom Card Inc.*, 265 F. Supp. 2d 445 (D. Del. 2003) (enjoining duplicative action filed in another court one hour and a half after Delaware action was commenced).  This Court has also recognized its discretionary authority to dismiss a second-filed declaratory judgment action that does not serve the policies underlying the Declaratory Judgment Act.  *Eastman Kodak Co. v. Studiengesellschaft Kohle mbH*, 392 F. Supp. 1152, 1157-58 (D. Del. 1975) (dismissing second-filed declaratory judgment action under 28 U.S.C. §2201-2202).

Here, Landis's mirror-image declaratory judgment action unduly multiplies the proceedings in this Court.  There is no question that it involves the same parties and the same issues as Elster's Motion to Enforce; both suits are based entirely on the parties' dispute concerning Landis's compliance with the PCLA.  Landis's procedural maneuver in filing the second action, calculated to gain the upper hand in this dispute by

giving it the status of plaintiff, defeats the objective of efficient judicial administration that underlies the first-filed rule.[1]  Under the first-filed rule and this Court's discretionary authority under the Declaratory Judgment Act, Elster's Motion to Enforce should be given priority and deference over Landis's second-filed action.  Accordingly, Landis's declaratory judgment action should be dismissed, stayed or in the alternative consolidated with Elster's Motion to Enforce in such a manner that Elster remains the putative plaintiff.

      II.     LANDIS'S   BREACH   OF   CONTRACT   ACTION SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.

      Under Delaware law, to state a claim for breach of contract, "a Plaintiff must establish that a contract existed, that the defendant breached an obligation imposed by the contract, and that the breach resulted in damage to the Plaintiff."  *Chase Manhattan Mortg. Corp. v. Advanta Corp.*, No. 01-507-KAJ, 2005 U.S. Dist. LEXIS 19374, at *44 (D. Del. Sep. 8, 2005) (citing *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003)). The sole averment of breach of contractual obligation in Landis's Complaint is that the PCLA requires filing a separate lawsuit, rather than a motion under the original case, for any alleged breach of the PCLA. (D.I. 1 at 3).  As discussed below and in Elster's Reply to Landis's Opposition to Elster's Motion to Enforce (D.I. 64, C.A. No. 97-417-KAJ), Landis cannot prevail on any set of facts that may be inferred from its breach of contract allegation, and therefore its pleading should

---

[1]      Although considerations of comity between federal courts do not apply here because both actions are proceeding in the same court, there can be no dispute that maintaining multiple proceedings on the same issue, even within the same court, is an inefficient use of judicial resources.

be dismissed for failure to state a claim. *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).

Landis's breach of contract claim turns on its interpretation of the word "suit." Under Delaware law, "the language of a contract is to be given its plain and ordinary meaning…where the provisions of a contract are plain and unambiguous, evidence outside the four corners of the document as to what was actually intended is generally inadmissible. Contract language is not rendered ambiguous simply because the parties in litigation differ concerning its meaning. *Dover Downs, Inc. v. TIG Ins. Co*., No. 04-199-SLR, 2004 WL 1812703 *4 (D. Del. 2004) (citations omitted); *Rhone-Poulenc v. Am. Motorists Ins. Co*., 616 A.2d 1192, 1196 (Del. 1992) ("a contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings"); *Liquor Exch., Inc. v. Tsaganos*, No. 19312-NC, 2004 WL 2694912 *2 (Del. Ch. 2004) ("[w]hen a contract is clear on its face, the court should rely solely on the clear, literal meaning of the words contained in the contract").

Here, the word "suit" can have only one interpretation -- a "generic term, of comprehensive signification, referring to any proceeding by one person or persons against another or others in a court of justice in which the plaintiff pursues, in such court, the remedy which the law affords him for the redress of an injury or the enforcement of a right, whether at law or in equity." Black's Law Dictionary 1286 (6th ed. 1990) (emphasis added); *see also* The Merriam-Webster Dictionary 491 (11th ed. 2005) (defining suit as "an action in court to recover a right or claim"). The term "suit," as used in the PCLA, is unmistakably clear. It does not require a separate lawsuit.

Furthermore, under this Court's precedent, where parties enter into a Stipulation and Order of Dismissal providing that the Court retains jurisdiction to enforce a settlement agreement by incorporating the agreement into the Order, "the Settlement Agreement is enforceable by motion; a party with a grievance need not file a new complaint."  *Interspiro USA Inc. v. Figgie Int'l, Inc.*, 815 F. Supp. 1488, 1500-1501 (D. Del. 1993), *citing Halderman v. Pennhurst State Sch. & Hosp.*, 901 F.2d 311, 317 (3d Cir.), *cert. denied*, 498 U.S. 850 (1990); *also citing Hobbs & Co., Inc. v. Am. Investors Mgmt.*, 576 F.2d 29, 34-35 (3d Cir. 1978).  In *Hobbs*, the Third Circuit recognized that "it is well established that district courts generally have the power to enforce summarily, on motion, settlement agreements entered into with their approval . . . ." 576 F.2d at 34. Here, the Court did just that – it "retained jurisdiction over the parties and the subject matter for the purpose of enforcing the Settlement Agreement and the [PCLA]" both of which were expressly incorporated into the Stipulation and Order of Dismissal (Exh. B). Thus, Elster was not required to file a separate lawsuit and Landis has no cause of action for breach of contract.

CONCLUSION

For the foregoing reasons, this Court should dismiss or stay this action in favor of Elster's first-filed Motion to Enforce (D.I. 58, C.A. No. 97-417-KAJ).


MORRIS, NICHOLS, ARSHT & TUNNELL LLP


/s/ Julia Heaney
_____
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jheaney@mnat.com
Attorneys for Defendant Elster Electricity LLC

OF COUNSEL:

Steven J. Rocci
Steven B. Samuels
Vincent J. Roccia
WOODCOCK WASHBURN LLP
One Liberty Place, 46th Floor
Philadelphia, PA 19103

March 23, 2006

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, hereby certify that on March 23, 2006, I electronically filed the foregoing with the Clerk of the Court using CM/ECF which will send notification of such filing to the following:

> Neal C. Belgam, Esquire
> Blank Rome LLP
> Chase Manhattan Centre
> 1201 Market Street, Suite 800
> Wilmington, DE 19801

and I, the undersigned, also hereby certify that on March 23, 2006, I sent by Federal Express, the above-stated document to:

> Blair Jacobs, Esquire
> Sutherland Asbill & Brennan LLP
> 1275 Pennsylvania Avenue, NW
> Washington, DC 20004

> /s/ Julia Heaney (#3052)
> Morris, Nichols, Arsht & Tunnell LLP
> 1201 N. Market Street
> P.O. Box 1347
> Wilmington, DE 19899
> jheaney@mnat.com

EXHIBIT A

## PATENT CROSS-LICENSE AGREEMENT

This Patent Cross-License Agreement ("Agreement") is entered into as of October 1, 1998, by and between Siemens Metering Ltd. (which includes the former metering business of Landis & Gyr (Europe) AG) and Siemens Power Transmission & Distribution LLC (which includes the former metering business of Landis & Gyr Utilities Services, Inc.), a Delaware limited liability company (collectively "Siemens"), and ABB Power T&D Company Inc. ("ABB"), a Delaware corporation.

WHEREAS, Siemens and ABB desire to grant and obtain licenses under various patents as defined herein on the terms and conditions specified herein:

NOW THEREFORE, the parties hereto agree as follows:

1.    Definitions

1.1    ABB Licensed Patents. "ABB Licensed Patents" shall mean the following patents: United States Patent Nos. 5,537,333; 5,544,089; 5,548,527; 5,555,508; 5,621,629; 5,631,843; 4,654,588; 4,852,030; 5,537,029; and, 5,457,621 and all continuations, divisionals, reissues and reexams of these patents or resulting from any common parent applications of these patents.

1.2    L&G/Siemens Licensed Patents. "L&G/Siemens Licensed Patents" shall mean the following patents: U.S. Patent Nos. 4,902,964; 4,987,363; and 5,262,715; and all continuations, divisionals, reissues and reexams of these patents or resulting from any common parent applications of these patents; and EPO Patent No. 524,378 and German Patent No. 94 14 256.4 U1 and all continuations, divisionals, extensions and renewals thereof.

1

1.3    (a)    Net Sales Price.  "Net Sales Price" means the gross sales price less the following items to the extent to which they are included in such gross sales or lease price:  (i)  trade and quantity discounts (but not cash discounts, advertising allowances, or commissions paid to any salesperson, sales agent or manufacturer's representative); (ii) transportation and insurance costs on shipments to the customer; and (iii) sales, use and other similar taxes.

(b)    Net Lease Price.  "Net Lease Price" means the cumulative gross lease price payments less:  (i) trade and quantity discounts (but not cash discounts, advertising allowances, or commissions paid to any salesperson, sales agent or manufacturer's representative); (ii) transportation and insurance costs on shipments to the customer; and (iii) sales, use and other similar taxes.

1.4    Running Royalty Period.  "Running Royalty Period" shall mean the time period commencing July 15, 2000 and continuing through the end of the Term of this Agreement as defined in Section 3.1.

1.5    Licensed Products.  "Licensed Products" means electric meters falling within the scope of the ABB Licensed Patents or kits or components specifically designed for use therewith.

1.6    Specific Licensed Product(s).  "Specific Licensed Product(s)" means electric energy meters or kits or components specifically designed for use in such electric energy meters embodying one or more of the following features:

(a)  A programmable meter for electronically measuring electrical energy used by  a residential, commercial or industrial customer, the meter comprising processing circuitry receiving voltage and current signals corresponding to at least two phase service, the processing circuitry

2

comprising 3 sigma delta ($\Sigma\Delta$) analog to digital (A/D) converters, a first $\Sigma\Delta$ A/D converter receiving only the voltage signals corresponding to each phase, a second $\Sigma\Delta$ A/D converter receiving only the current signals corresponding to each phase, and a third $\Sigma\Delta$ A/D converter used to simultaneously sample a voltage reference for a given phase or to simultaneously sample a phase different from the given phase for non-Blondel compliant applications.

(b) A programmable meter for electronically measuring electrical energy used by a residential, commercial or industrial customer, the meter comprising processing circuitry receiving voltage and current signals corresponding to at least two phase service, the processing circuitry comprising plural analog to digital (A/D) converters, each A/D converter having a conversion rate of 7200 Hz (+/- 10%), an A/D channel having a conversion rate of 2400 Hz (+/- 10%) or a digital resolution of 21 bits (20 bits plus sign).

(c) A meter for electronically measuring electrical energy used by a residential, commercial or industrial customer, the meter comprising first and second processors, the first processor receiving voltage and current inputs and determining energy based thereon and having an associated memory from which a program code is executed (program code being defined as DSP code resident in the meter that can be executed by the first processor during metering operations), the meter also comprising one or both of a communications medium for communicating externally with one of the processors and/or a non-volatile memory, the program code for the first processor being alterable (meaning providing a different meter functionality, e.g., ABB "Alpha Keys" and form changes) in the field (i.e., not in the factory) via either the communications medium or from program code stored

3

in the non-volatile memory, but specifically not including transferring program code from a non-volatile memory to executable code space (RAM) at initialization, providing that the program code is the same as at first initialization.

(d)  A programmable meter comprising a first and second processor for electronically measuring electrical energy used by a residential, commercial or industrial customer, the meter having an interface to provide optional functionality to the meter, where the interface allows direct access to the information generated by the first processor in the meter, (e.g., #38, Figure 1, U.S. Patent No. 5,555,508) wherein direct access does not include an interface connected to the second processor as long as the interface only accesses information after it is processed by the second processor.

(e)  A meter for measuring electrical energy having a power supply capable of accepting a range of input voltages and providing a substantially regulated output voltage independent of the input voltage, the power. supply comprising a transformer and a switching regulator circuit operatively coupled to a primary winding of the transformer, there being a voltage clamping circuit receiving the input voltage, the voltage clamping circuit being operative to limit the voltage applied to the primary winding or the switching regulator circuit, but specifically not including a meter with a power supply using a voltage clamping circuit that is designed to regulate the voltage applied to the primary winding or switching regulator circuit only when transient over-voltages are present on the line, such as an MOV or surge protection circuit.

(f)  A meter for electronically measuring electrical energy having a display comprising three annunciators that are each selectively actuable to a visible

4

state and being arranged in a row, the first and the third annunciators in the row being arrow-shaped and being pulsed to the visible state at a rate corresponding to a rate of energy consumption, the second annunciator being pulsed at a rate corresponding to a rate of equivalent disk rotation.

2.    Grant

2.1    ABB hereby grants, Siemens and its subsidiaries and affiliates, only as long as they are more than 50% owned by Siemens or a parent thereof, a nonexclusive license, with no right to sublicense, to make, have made, import, use, offer to sell, sell or lease Licensed Products and Specific Licensed Products.

2.2    No rights, express or implied, are granted under any foreign patents, foreign utility models, or foreign petty patents corresponding to any of the ABB Licensed Patents.

2.3    Siemens hereby grants ABB and its subsidiaries and affiliates, only as long as they are more than 50% owned by ABB or a parent thereof, a nonexclusive license, with no right to sublicense, to make, have made, import, use, offer to sell, sell or lease electric power meters under the L&G/Siemens Licensed Patents.

3.    Term

3.1    The term ("Term") of this Agreement shall commence at the final execution hereof and continue through the expiration of the term of the last-to-expire of the ABB Licensed Patents.

5

4.  Compensation

4.1  In consideration of the license granted herein to Siemens by ABB, Siemens shall make a single non-refundable payment to ABB in the amount of two million dollars (USD) ($2,000,000.00) within five(5) business days of the date of final execution of this Agreement.

4.2  In further consideration of the license granted herein to Siemens by ABB, Siemens shall pay a running royalty to ABB at the rate of 5% of Net Sales or Lease Price of Specific Licensed Products manufactured, sold or leased by Siemens in the United States during the Running Royalty Period. The aforesaid running royalty shall be due and payable within thirty (30) days after the end of each calendar quarter and such payment shall be accompanied by a written royalty report setting forth the number of Specific Licensed Product(s) which have been sold or leased during the preceding quarter, the gross sales price, Net Sales Price of such products and the royalties due thereon or the gross lease price, Net Lease Price and the royalties due thereon.

4.3  In consideration of the license granted herein to ABB by Siemens, ABB shall grant Siemens a 2.5% credit against the 5% running royalty described in Section 4.2 throughout the Running Royalty Period. The net result of this credit is a 2.5% royalty on Net Sales Price or Net Lease Price of any Specific Licensed Products subject to royalty during the Running Royalty Period.

4.4  The parties agree that this net royalty rate of 2.5% shall apply throughout the Running Royalty Period regardless of any judicial or administrative determination that any of the patents licensed hereunder are invalid, unenforceable or not patentable.

6

4.5    During the Running Royalty Period, ABB shall have the right, upon reasonable notice and at its own expense, to have an independent third party acceptable to the parties conduct an annual audit of the sales records, royalty reports and like documentation of Siemens to verify the royalties due under this Agreement but this information shall be used for no other purpose and ABB shall maintain the confidentiality of this information.

4.6    Siemens agrees to keep accurate records and books of account covering all sales or leases made of Specific Licensed Product(s), all orders received for Specific Licensed Product(s), all discounts, transportation charges and taxes subtracted in determining the Net Sales Price or the Net Lease Price, and all Specific Licensed Product(s) in inventory at the close of each calendar quarter. Such records and books of account shall be retained for six years following the period to which they apply.

5.    Assignment

5.1    This Agreement shall be binding upon and inure to the benefit of the successors and assigns of the parties to this Agreement. This Agreement shall not be assignable by ABB or Siemens, except that ABB and Siemens may assign at any time all of their rights and obligations under this Agreement to any of their parents or wholly-owned subsidiaries, provided, that the parties shall remain liable for the performance of all obligations under this Agreement.

6.    Warranties and Representations

6.1    ABB warrants and represents that it has the legal right to grant the license set forth in Section 2.1. Siemens warrants and represents that it has the legal right to grant the license set forth in Section 2.3.

7

6.2    Preclusion of Patent Challenges

The parties agree that they will not seek to invalidate or render unenforceable the patents licensed herein, and the parties further agree that they will not take any action that would serve to encourage, finance, contribute or promote any third party or person to challenge or otherwise seek to invalidate or render unenforceable the patents licensed herein. However, nothing in this provision shall limit a party's right to rely upon prior art or prior activities for the purposes of construing the licensed patents or the terms of this Agreement.

7.    Applicable Law and Jurisdiction

7.1    This Agreement and performance hereunder shall be governed by and construed in accordance with the laws of the state of Delaware (without giving effect to the conflict of laws principles thereof). Any and all proceedings relating to the subject matter hereof shall be maintained in the United States District Court for the District of Delaware ("District Court"), which court shall have exclusive jurisdiction for such purpose. ABB and Siemens hereby consent to the continued personal and subject matter jurisdiction of the District Court regarding the enforcement of this Agreement and the Settlement Agreement executed in connection therewith. ABB agrees that Siemens AG has not agreed to or consented to and is not subject to the jurisdiction of the federal, state or local courts of the United States of America for any purpose, including the enforcement of this Agreement and/or the Settlement Agreement.

8.    Enforceability

8.1    If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions

8

shall in no way be affected or impaired thereby.  If any provision is illegal, invalid or unenforceable, the parties shall, to the extent lawful and practicable, use reasonable efforts to enter into arrangements to reinstate the intended benefits of such provisions.

9.    Entire Agreement

9.1    This Agreement and the Settlement Agreement executed in connection herewith contain the entire agreement between the parties hereto with respect to the subject matter hereof and thereof and supersedes all prior agreements and undertakings between the parties relating to the subject matter hereof and thereof.

10.    Amendments and Waivers

10.1    All amendments and other modifications hereof shall be in writing and signed by each of the parties hereto.  The failure of either party to exercise in any respect any right provided for herein shall not be deemed a waiver of any right hereunder.

11.    Litigation

11.1    The parties agree that notice of any alleged breach of this Agreement shall be provided to the allegedly breaching party at least thirty (30) days prior to the filing of any litigation in connection therewith.  The parties further agree that the allegedly breaching party shall have thirty (30) days following receipt of such notice to cure any such alleged breach, and that both parties shall engage in good faith discussions in an effort to amicably resolve any dispute prior to commencement of litigation thereon.

11.2   In regard to any claim by ABB concerning royalties due under this Agreement, ABB shall initiate any litigation against Siemens on such claim within two (2) years of the first sale within the Running Royalty Period of the product that is the subject of the royalty dispute. In any such litigation, (i) the prevailing party shall receive its reasonable attorneys' fees; and (ii) ABB shall be entitled to pre-judgment interest on the back royalties (if any) found to be due ABB in the amount of prime plus 5% in the event ABB prevails.

11.3   In regard to any other claim of breach of this Agreement, the party initiating such litigation shall do so within two (2) years of the occurrence of the alleged breach unless such breach is fraudulently concealed.

12.    Remedies

12.1   ABB's sole and exclusive remedy for claims pertaining to royalties due hereunder is a suit for recovery of the monetary amounts specified in Section 11.2.

12.2   ABB's and Siemens' sole and exclusive remedy for any other alleged breach of this Agreement shall be a suit for recovery of such actual damages as are caused by such breach.

12.3   Nothing in this Agreement shall preclude the District Court from awarding any just and proper relief if it finds that either party acted in bad faith in connection with any dispute over the terms and conditions of this Agreement or the Settlement Agreement.

10

13.    Termination

13.1    This Agreement is not subject to termination except by written consent of both
parties, and the licenses granted hereunder are irrevocable.

14.    Notices and Reports

All notices and reports required or permitted to be given by and between the parties under
the provisions of this Agreement, shall be in writing and shall for all purposes be deemed
to be fully given and received if sent by Registered Mail, postage prepaid, to the respective
parties of the addresses:

       To ABB:

           Dr. John G. Reckleff
           Vice President
           ABB Power T&D Company Inc.
           201 South Rogers Lane
           Raleigh, NC 27610-2107

       To Siemens:

           John W. Shumar
           Siemens Power Transmission & Distribution, LLC
           100 Forsyth Hall Drive, Suite A
           Charlotte, NC 28273
           P.O. Box 240451
           Charlotte, NC 28224-0451

           Jan van Dokkum
           Siemens Power Transmission & Distribution, LLC
           7000 Siemens Road
           Wendell, NC 27591
           P.O. Box 29503
           Raleigh, NC 27626-0503

           Dr. Johannes Milde
           Siemens Metering Ltd.
           Feldstrasse 1
           CH-6301 Zug

11

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the date hereof.

ABB POWER T&D COMPANY INC.

By: _____

Title: _____

SIEMENS METERING LTD. (which
includes the former metering business of
Landis & Gyr (Europe) AG)

SIEMENS POWER TRANSMISSION &
DISTRIBUTION LLC (which includes the
former metering business of Landis & Gyr
Utility
Services, Inc.)

By: _____

Title: _____

By: _____

Title: _____

12

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the date hereof.

ABB POWER T&D COMPANY INC.

By: _____

Title: Executive Vice President


SIEMENS METERING LTD. (which includes the former metering business of Landis & Gyr (Europe) AG)


By: _____

Title: _____


SIEMENS POWER TRANSMISSION & DISTRIBUTION LLC (which includes the former business of Landis & Gyr Utility Services, Inc.


By: _____

Title: _____


12

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the date hereof.

ABB POWER T&D COMPANY INC.

By: _____

Title: _____

SIEMENS METERING LTD. (which
includes the former metering business of
Landis & Gyr (Europe) AG)

By: _____

Title: President

*Jole Little*
*VP. Digital Devices*

SIEMENS POWER TRANSMISSION &
DISTRIBUTION LLC (which includes the
former metering business of Landis & Gyr
Utility
Services, Inc.)

By: _____

Title: _____

12

IN WITNESS WHEREOF, the parties hereto have signed this Agreement as of the date hereof.

ABB POWER T&D COMPANY INC.

By: _____

Title: _____


SIEMENS METERING LTD. (which
includes the former metering business of
Landis & Gyr (Europe) AG)



By: _____

Title: _____

SIEMENS POWER TRANSMISSION &
DISTRIBUTION LLC (which includes the
former metering business of Landis & Gyr
Utility
Services, Inc.)

By: _____

Title: _President & CEO_____

10-14-98

12

# EXHIBIT B

FROM MNA&T

(WED) 10. 28' 98 11:42/ST. 11:37/NO. 4261979626 P 2

( FF

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ABB POWER T&D COMPANY, INC. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. 97-417-MMS |
| | § | |
| LANDIS & GYR UTILITIES | § | |
| SERVICES HOLDINGS, INC., | § | |
| LANDIS & GYR UTILITIES | § | |
| SERVICES, INC. and | § | |
| ELECTROWATT AG, | § | |
| | § | |
| Defendants. | § | |

## STIPULATION AND ORDER OF DISMISSAL

Pursuant to Federal Rule of Civil Procedure 41, the claims of Siemens Metering Ltd. ("SML") and Siemens Power Transmission and Distribution LLC ("ST&D") against ABB Power T&D Company Inc. ("ABB") and the claims of ABB against SML and ST&D are hereby dismissed with prejudice, according to the Settlement Agreement between the parties. The claims of Landis & Gyr Utilities Services Holdings, Inc. ("L&GUSH"), Landis & Gyr Utilities Services, Inc. ("L&GUS") and Electrowatt AG ("Electrowatt") against ABB and the claims of ABB against L&GUSH, L&GUS and Electrowatt are hereby dismissed without prejudice, according to the Settlement Agreement between the parties.

Each party to bear its own costs, expenses and attorney fees.

This Court retains jurisdiction over the parties and the subject matter for the purpose of enforcing the Settlement Agreement and the Patent Cross-License Agreement

executed in connection therewith, both of which are expressly incorporated herein by

reference.

MORRIS, NICHOLS. ARSHT &
TUNNELL

*Karen Jacobs Louden*
_____
Donald F. Parsons, Jr. (#437)
Karen Jacobs Louden  (#2881)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200

*Counsel For Plaintiff*
 *ABB POWER T&D COMPANY*

POTTER ANDERSON & CORROON

_____
William J. Marsden, Jr. (#2247)
Hercules Plaza
1313 N. Market Street
P.O. Box 951
Wilmington, DE  19899-0951
(302) 984-6000

*Counsel For Defendants*
*LANDIS & GYR UTILITIES SERVICES*
*HOLDINGS, INC., LANDIS & GYR*
*UTILITIES SERVICES, INC.,*
*ELECTROWATT AG, SIEMENS METERING LTD.*
*and SIEMENS POWER TRANSMISSION AND*
*DISTRIBUTION LLC*


**SO ORDERED** this 2ₜₕ day of _____O ct._____, 1998.

_____
United States District Court Judge

346152v1

2